1   KEKER, VAN NEST & PETERS LLP
    BENJAMIN BERKOWITZ - # 244441
2   bberkowitz@keker.com
    KHARI J. TILLERY - # 215669
3   ktillery@keker.com
    ANJALI SRINIVASAN - # 304413
4   asrinivasan@keker.com
    RYLEE KERCHER OLM - # 318550
5   rolm@keker.com
    633 Battery Street
6   San Francisco, CA  94111-1809
    Telephone:    415-391-5400
7   Facsimile:    415-397-7188

8   Attorneys for Defendant
    TWITTER, INC.

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13   OMAR ABDULAZIZ,                     Case No. 3:19 cv-06694-LB

           Plaintiff,                    **DEFENDANT TWITTER, INC.'S**
14                                       **NOTICE OF MOTION AND MOTION**
                                         **TO DISMISS PLAINTIFF'S THIRD**
15         v.                            **AMENDED COMPLAINT**

16   TWITTER, INC.,                      Date:      February 11, 2021
                                         Time:      9:30 a.m.
17         Defendant.                    Dept.:     Courtroom B- 15th Floor
                                         Judge:     Hon. Laurel Beeler
18
                                         Date Filed:  October 18, 2019
19
                                         Trial Date: None Set
20

21

22

23

24

25

26

27

28

1538827

1

# **TABLE OF CONTENTS**

2

**Page**

3 MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

4 I.      INTRODUCTION ........................................................................................................2

5 II.     BACKGROUND ..........................................................................................................3

6
        A.      Abdulaziz is a well-known and public critic of the KSA and was the
                subject of political harassment by the KSA long before any alleged
7               improper access of his Twitter account. ........................................................3

8       B.      In 2014, the KSA recruited Abouammo and Alzabarah to gain access to
                Twitter account information. ..........................................................................4
9
        C.      Twitter informed individuals whose accounts may have been compromised. ........5
10
        D.      After receiving the 2015 notice from Twitter, Abdulaziz did not suffer any
11              direct harassment from the KSA for nearly three years.......................................6

12      E.      In June 2018, Abdulaziz's mobile phone was hacked by the KSA; he then
                suffered further harassment by the KSA.........................................................7
13
   III.    PROCEDURAL BACKGROUND.................................................................................7
14
   IV.     QUESTIONS PRESENTED.........................................................................................9
15
   V.      LEGAL STANDARD...................................................................................................9
16
   VI.     ARGUMENT ...............................................................................................................9
17
        A.      Abdulaziz lacks standing because he fails to plead any causal nexus
18              between Twitter's alleged conduct and his alleged harms.......................................9

19      B.      Abdulaziz similarly fails to plead proximate causation. .........................................12

20      C.      Because Abdulaziz waited nearly four years to file suit, his claims should
                be dismissed as time-barred. ..............................................................................13
21
        D.      Abdulaziz's claims are barred by Twitter's Terms of Service. ...........................15
22
        E.      Abdulaziz's negligent supervision and retention claim fails because he does
23              not plead sufficient facts to support the claim. ....................................................17

24 VII.    CONCLUSION............................................................................................................19

25

26

27

28

1538827

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allen v. Wright*,
5       468 U.S. 737 (1984), *overruled on other grounds by Lexmark Int'l, Inc. v.*
6       *Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ........................................10

7

*Appling v. Wachovia Mortg., FSB*,
        745 F. Supp. 2d 961 (N.D. Cal. 2010) ..........................................................................9

8

*Ashcroft v. Iqbal*,
9       556 U.S. 662 (2009).................................................................................9, 12, 18

10

*Balistreri v. Pacifica Police Dep't*,
        901 F.2d 696 (9th Cir. 1990) ........................................................................................9

11

*Bass v. Facebook, Inc.*,
12      394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................................................................16

13

*Bell Atl. Corp. v. Twombly*,
14      550 U.S. 544 (2007)......................................................................................................9

15

*Boruta v. JPMorgan Chase Bank, N.A.*,
        No. 19-CV-03164-WHO, 2019 WL 4010367 (N.D. Cal. Aug. 26, 2019) ...............12

16

*Broder v. Cablevision Sys. Corp.*,
17      418 F.3d 187 (2d Cir. 2005)........................................................................................16

18

*Daniel v. Nat'l Park Serv.*,
19      891 F.3d 762 (9th Cir. 2018) ......................................................................................11

20

*Darnaa, LLC v. Google LLC*,
        756 F. App'x 674 (9th Cir. 2018) ..........................................................................16, 17

21

*Garamendi v. SDI Vendome S.A.*,
22      276 F. Supp. 2d 1030 (C.D. Cal. 2003) ......................................................................15

23

*Garcia v. Enter. Holdings, Inc.*,
        78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........................................................................16

24

*Hartman v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*),
25      536 F.3d 1049 (9th Cir. 2008) ......................................................................................9

26

*Hernandez v. Sutter W. Capital*,
27      No. C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010)......................15

28

*Kaldis v. Wells Fargo Bank, N.A.*,
        263 F. Supp. 3d 856 (C.D. Cal. 2017) ........................................................................14

ii

1538827

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................9, 10, 11

*Marchisheck v. San Mateo Cnty.*,
  199 F.3d 1068 (9th Cir. 1999) ...............................................13

*McGowan v. Weinstein*,
  No. 2:19-cv-09105-ODW, 2020 WL 7210934 (N.D. Cal. Dec. 7, 2020)..............................15

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012)..........................12

*Nichols v. Brown*,
  859 F. Supp. 2d 1118 (C.D. Cal. 2012) ...............................................12

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) ...............................................12

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016)...............................................10, 11

*United States v. Abouammo, et al.*,
  No. 3:19-MJ-71824-MAG (N.D. Cal.) ...............................................4, 5, 14

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)...............................................11

**State Cases**

*Berkley v. Dowds*,
  152 Cal. App. 4th 518 (2007) ...............................................12

*Doe v. Capital Cities*,
  50 Cal. App. 4th 1038 (1996) ...............................................17

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal. App. 4th 1118 (2012) ...............................................16

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ...............................................15

*Juarez v. Boy Scouts of Am., Inc.*,
  81 Cal. App. 4th 377 (2000) ...............................................17

*Lewis v. YouTube, LLC*,
  244 Cal. App. 4th 118 (2015) ...............................................16

*Mendoza v. City of Los Angeles*,
  66 Cal. App. 4th 1333 (1998) ...............................................12

DEFENDANT TWITTER'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1538827

*Olsen v. Breeze, Inc.*,
    48 Cal. App. 4th 608 (1996) ................................................................................17

*Pipitone v. Williams*,
    244 Cal. App. 4th 1437 (2016) ...........................................................................13

*So v. Shin*,
    212 Cal. App. 4th 652 (2013) ..............................................................................15

*State Dep't of State Hosps. v. Super. Ct.*,
    61 Cal. 4th 339 (2015) ........................................................................................13

*Viner v. Sweet*,
    30 Cal. 4th 1232 (2003) ......................................................................................13

**State Statutes**

Cal. Civ. Code § 1668 ...............................................................................................16

Cal. Civ. Proc. Code § 335.1 ....................................................................................14

**Rules**

Federal Rule of Civil Procedure Rule 12 ...........................................................1, 9, 19

**Other Authorities**

Hon. Virginia A. Phillips, et al., *Federal Civil Procedure Before Trial*, § 9:223
    (2020)...................................................................................................................3

DEFENDANT TWITTER'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1538827

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 11, 2021, at 9:30 a.m., or as soon thereafter as this matter can be heard, in the courtroom of Magistrate Judge Laurel Beeler, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Twitter, Inc. will move this Court for an order dismissing Plaintiff Omar Abdulaziz's Third Amended Complaint.

This motion is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiff lacks Article III standing and that the Third Amended Complaint fails to state a claim upon which relief may be granted.  This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Twitter's Request for Judicial Notice in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (ECF No. 42), the Declaration of Twitter Employee[1] in Support of Twitter's Motion to Dismiss Plaintiff's FAC (ECF No. 41-5) and accompanying exhibits, the Declaration of Rylee Kercher Olm in Support of Twitter's Motion to Dismiss Plaintiff's FAC (ECF No. 41-1) and accompanying exhibits, Twitter's Supplemental Request for Judicial Notice in Support of its Motion to Dismiss Plaintiff's FAC (ECF No. 61), the Supplemental Declaration of Twitter Employee in Support of Twitter's Motion to Dismiss Plaintiff's FAC (ECF No. 60-1) and accompanying exhibits, all files, records, and orders in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

Dated: December 18, 2020

KEKER, VAN NEST & PETERS LLP

By:    /s/ Benjamin Berkowitz
BENJAMIN BERKOWITZ
KHARI J. TILLERY
ANJALI SRINIVASAN
RYLEE KERCHER OLM

Attorneys for Defendant TWITTER, INC.

---

[1] The Court sealed from the public record the name and identity of the Twitter Employee declarant (ECF Nos. 44 and 65).  Accordingly, Twitter refers to the declarant solely as Twitter Employee in this motion.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3       Plaintiff Omar Abdulaziz's Third Amended Complaint ("TAC") fails to cure the

4   fundamental deficiencies from all three of his prior complaints: he sued the wrong party and waited

5   nearly four years before filing suit.  These flaws led the Court to dismiss his First Amended

6   Complaint ("FAC") in its entirety for lack of Article III standing and failure to state a claim.  The

7   TAC adds speculative and demonstrably false allegations in a misguided attempt to support his

8   remaining two claims, but once again, his TAC fails as a matter of law.

9       In 2014 and 2015, Twitter and certain individuals who use its service were victims of state-

10   sponsored espionage carried out by the KSA.  The KSA allegedly targeted and recruited two

11   Twitter employees, Ali Alzabarah and Ahmad Abouammo, to access Twitter accounts on its behalf

12   without the knowledge or authorization of Twitter or the accountholders.  In December 2015, upon

13   learning that its employees may have been compromised by a foreign government, Twitter took

14   steps to protect its accountholders, including terminating Alzabarah's access to Twitter's computer

15   systems, seizing his laptop, and physically escorting him out of the building.  Abouammo had

16   already resigned from Twitter.  Thereafter, Twitter cooperated with the federal government's

17   confidential investigation into Alzabarah and Abouammo's activities.  Twitter also sent notices to

18   individuals whose accounts had potentially been accessed by Alzabarah or Abouammo on behalf of

19   the KSA, including multiple notices to Abdulaziz.  Abdulaziz's lawsuit comes nearly four years

20   after the KSA's activities were discovered and stopped, and nearly four years after Twitter provided

21   notice to potentially affected individuals, including to Abdulaziz.

22       Abdulaziz's TAC asserts two claims: (1) negligent supervision and/or retention of an

23   employee, and (2) negligence.  Both of Abdulaziz's claims fail for multiple, independent reasons,

24   many of which the Court already identified in dismissing his FAC.  *First*, Abdulaziz lacks Article

25   III standing because his TAC still does not allege a causal connection between Alzabarah and

26   Abouammo's alleged unauthorized access of his Twitter account and any harm he alleges he

27   suffered.  *Second*, Abdulaziz's claims should be dismissed because he does not sufficiently plead

28   proximate causation—an even higher standard than Article III's causation requirement.  *Third*,

because Twitter notified Abdulaziz of the unauthorized access of his account in December 2015, his delay of almost four years in filing suit renders both of his claims time barred.  *Fourth*, Abdulaziz's claims are barred by Twitter's Terms of Service.  And, *fifth*, Abdulaziz's negligent supervision and retention claim fails for the additional reason that he pleads no facts that Twitter was aware of Alzabarah or Abouammo's misconduct or that it knew or should have known that they had become agents of the KSA.

Abdulaziz's TAC could not cure these flaws because, as before, he has sued the wrong party.  While Twitter recognizes the seriousness of the TAC's portrayal of persistent state-sponsored abuse, these actions are alleged to have been perpetrated by the KSA, not by Twitter.  Twitter did not spy on Abdulaziz's account or harass him and his family, nor did it abet the KSA's alleged activities.  Because Abdulaziz has demonstrated that he cannot cure these defects through amendment, his TAC should be dismissed in its entirety and with prejudice.

## II.     BACKGROUND

### A.     Abdulaziz is a well-known and public critic of the KSA and was the subject of political harassment by the KSA long before any alleged improper access of his Twitter account.

In 2009, Abdulaziz moved from Saudi Arabia to Canada and established himself as a well-known and vocal critic of the KSA, including on Twitter and other social media.  TAC ¶ 8.  The KSA retaliated by harassing Abdulaziz, and he sought asylum in Canada on that basis in December 2013.  *Id.* ¶¶ 2, 8, 120.  In response to the KSA's harassment, Abdulaziz increased his criticism of the KSA, including on Twitter (where he currently has over 500,000 subscribers) and on his YouTube channel (where he has over 163,000 subscribers).  *Id.* ¶ 154; FAC ¶ 16.[2]  Abdulaziz's public criticism of the KSA has garnered him a large social media following and has also won him recognition as one of the three most influential voices shaping public discourse about the KSA—facts which were known to the KSA independent of any alleged access of Twitter data.  *Id.* ¶¶ 1, 28, 140; *see also* FAC ¶¶ 18, 28, 30.

---

[2] The Court may consider statements made in Abdulaziz's earlier pleadings as party admissions. Hon. Virginia A. Phillips, et al., *Federal Civil Procedure Before Trial*, § 9:223 (2020) (citing *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any less an admission of the party.")).

**B.**     **In 2014, the KSA recruited Abouammo and Alzabarah to gain access to Twitter account information.**

According to the FBI's investigation, in or about 2014, Twitter and certain of its accountholders became the targets of KSA espionage.  The KSA allegedly recruited two Twitter employees, Abouammo and Alzabarah, to access certain Twitter accounts.  TAC ¶¶ 38, 60.  Both individuals are now facing criminal charges in the U.S. District Court for the Northern District of California.  *See United States v. Abouammo, et al.*, Case No. 3:19-cr-000621-EMC (N.D. Cal.).

Alzabarah had been a resident of the United States since 2005 and had studied and obtained degrees in computer science from American universities.  *See Abouammo*, ECF No. 1, ¶ 16.  He worked as a site reliability engineer at Twitter from approximately August 2013 until December 2015.  *Id.*  Abouammo is a United States citizen.  *Id.* ¶ 17.  He was employed by Twitter from November 2013 to May 2015 as a Media Partnerships Manager responsible for the Middle East and North Africa.  *Id.*  In that role, he assisted brands, journalists, and celebrities and other notable Twitter accountholders in that region with their Twitter content and strategy.  *Id.*

As described in the superseding indictment, in December 2014, Abouammo, acting on behalf of the KSA, began accessing certain Twitter accounts without Twitter's authorization.  *Abouammo*, ECF No. 53 ¶ 26.  Around May 2015, Alzabarah also began secretly accessing Twitter accounts without Twitter's authorization.  *Id.*  The DOJ alleges that Abouammo and Alzabarah accessed certain basic account information, but the DOJ does not allege that they were able to access any Twitter accountholders' direct messages.  *See id.* ¶¶ 17, 23, 26.[3]  Both Abouammo and Alzabarah's access of account information on behalf of the KSA were direct violations of their employment obligations and of Twitter's written policies.  *Id.* ¶¶ 15, 18-19.  Indeed, even Abdulaziz's TAC recognizes that Abouammo and Alzabarah's activities were "unauthorized" and "violated" Twitter policies.  *See, e.g.*, TAC ¶¶ 33, 44, 52, 64.

After learning of Abouammo and Alzabarah's misconduct in late 2015, Twitter promptly

---

[3] Once again, Abdulaziz repeats the false and conclusory allegation that Abdulaziz's "direct messages" were accessed by Abouammo and Alzabarah, but he identifies no evidentiary basis to support these allegations.  *See* TAC ¶¶ 46, 87, 125.  These allegations are supported by neither the original indictment nor the superseding indictment in the DOJ's criminal matter, which Abdulaziz otherwise relies on for the factual allegations of his TAC.  Nevertheless, these false allegations do not save Abdulaziz's TAC, just as they did not save his FAC.

DEFENDANT TWITTER'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-CV-06694-LB

1538827

1    acted to protect its accountholders.  *See* TAC ¶¶ 79, 97-98.  Although Abouammo had resigned

2    from the company earlier that year, Alzabarah was still a Twitter employee.  *Id.* ¶¶ 63, 79.  On

3    December 2, 2015, Twitter placed Alzabarah on leave, seized his Twitter-owned laptop, and

4    escorted him from the building.[4]  *Abouammo*, ECF No. 53 ¶ 26(s); *id.*, ECF No. 1, ¶ 85; *see* TAC

5    ¶ 79.  Thereafter, Alzabarah fled to Saudi Arabia.  TAC  ¶ 80.

6            Twitter also cooperated with the FBI's confidential investigation into Abouammo and

7    Alzabarah's activities.  *See e.g.*, *Abouammo*, ECF No. 1 ¶¶ 20-23 (discussing Twitter's internal

8    polices); ¶ 26 (discussing emails obtained from Twitter), ¶¶ 42, 63 (discussing information obtained

9    through interviews with Twitter employees), ¶ 71 (discussing records obtained from Twitter).  On

10   November 19, 2019, Abouammo and Alzabarah were indicted in the U.S. District Court for the

11   Northern District of California.  *Id.*, ECF No. 13.  The superseding indictment characterizes Twitter

12   as an unwitting victim in Abouammo and Alzabarah's scheme.  *Id.*, ECF No. 53 ¶ 28 ("The scheme

13   deprived Twitter of the following: (a) its money and property by enabling individuals and entities

14   outside of Twitter, including members of the government of KSA and the Saudi Royal Family,

15   access to nonpublic account information of Twitter users . . . ; and (b) Twitter's intangible right to

16   the honest services of its employees and fiduciaries, Abouammo and Alzabarah.").  The DOJ has

17   never alleged that Twitter assisted or ignored its rogue employees' conduct.

18           **C.     Twitter informed individuals whose accounts may have been compromised.**

19           On or about December 11, 2015, Twitter sent out notices to holders of accounts that

20   Abouammo and Alzabarah appeared to have accessed without authorization.  TAC ¶ 111.  The

21   notice advised that: "As a precaution, we are alerting you that your Twitter account is one of a small

22   group of accounts that may have been targeted by state-sponsored actors."  *Id.* ¶ 113.

23           Twitter sent Abdulaziz the notice in two different ways on or about December 11, 2015, as

24   set forth in Twitter's Request for Judicial Notice in Support of Its Motion to Dismiss Plaintiff's

25   FAC (ECF No. 42) ("RJN"): first, via the email address that Abdulaziz had provided to Twitter,

26

27   ───────────────
     [4] The TAC alleges that Twitter's confrontation of Alzabarah disregarded the FBI's request that
28   Twitter hold off on approaching Alzabarah.  TAC ¶¶ 97-98.  Even accepting this allegation as true
     for purposes of this motion to dismiss, this allegation is entirely irrelevant to Abdulaziz's negligent
     supervision and/or retention claim, as well as his general negligence claim.  *See id.* ¶¶ 158-169.

1538827

RJN Ex. 1, Ex. 3 at 1; and second, through an in-app message that advised Abdulaziz as follows:



RJN Ex. 2; RJN Ex. 4 at 24;[5] *see also* Order Granting Defendants' Motions to Dismiss (ECF No. 76) ("Order") at 4 n.24 (taking notice of the December 11, 2015 notices under the doctrine of incorporation by reference).  While Abdulaziz continues to allege that he never "received" these notices, TAC ¶ 102, he admits that Twitter ***sent*** notices to impacted accountholders, *id.* ¶ 111.

### D.  After receiving the 2015 notice from Twitter, Abdulaziz did not suffer any direct harassment from the KSA for nearly three years.

According to the TAC, Abdulaziz did not personally suffer any harm resulting from Alzabarah or Abouammo's alleged unauthorized access of his Twitter account at any time during 2015, 2016, 2017, or the first four months of 2018.  In fact, the TAC does not allege the KSA contacted Abdulaziz at all until mid-2017, approximately two years after his Twitter account information was accessed.[6]  While the TAC has added allegations (not present in the original complaint) that certain of Abdulaziz's family members and acquaintances were targeted during this time period, *see id.* ¶ 122, Abdulaziz pleads no facts showing that those events resulted from information obtained by the KSA's access of his Twitter account.  Rather, according to Abdulaziz, such abuses are a common KSA tactic used to discourage dissident activity, *see id.* ¶¶ 9, 138; SAC

---

[5] Contrary to Abdulaziz's allegation, TAC ¶ 112, Twitter has provided evidence demonstrating that Twitter sent Abdulaziz the December 2015 notice via the "in-app" notification.  Attached as Exhibit 4 to Twitter's RJN is a list of User ID Numbers who were sent the in-app notification, with Abdulaziz's User ID Number appearing on that list.  Declaration of Twitter Employee in Support of Twitter's Motion to Dismiss Plaintiff's FAC (ECF No. 41-5) ("Twitter Employee Decl.") ¶ 6.

[6] The TAC now alleges that Abdulaziz was approached by an agent of MBS between April and June 2017 and encouraged to return to Saudi Arabia.  TAC ¶ 130.  According to Abdulaziz's prior complaints, however, he was not contacted by the KSA until May 2018.  *See* FAC ¶ 97.

1538827

¶ 203; FAC ¶¶ 10-17.

### E. In June 2018, Abdulaziz's mobile phone was hacked by the KSA; he then suffered further harassment by the KSA.

In May 2018, Abdulaziz alleges he was contacted by two individuals who identified themselves as agents of Mohammed Bin Salman ("MBS"). TAC ¶132. The agents demanded that Abdulaziz stop criticizing the KSA and return to Saudi Arabia, but Abdulaziz refused. *Id.* ¶¶ 132-133. The next month, KSA agents remotely planted malware on his phone. *Id.* ¶ 135. The malware, an Israeli-made software called Pegasus, allowed the KSA complete access to Abdulaziz's phone contents, and even allowed the KSA to spy on him in "real time" through control of his phone's camera and microphone. *Id.* ¶ 136. In July and August 2018, after the KSA's hacking of his phone but before Abdulaziz learned of it, Abdulaziz's family and friends became victims of several KSA-directed hostile actions. *Id.* ¶¶ 137-38. KSA security forces raided Abdulaziz's family home in Jeddah, Saudi Arabia in the middle of the night, and two of his brothers were arrested, imprisoned, and tortured. *Id.* Throughout these events, KSA security forces made specific reference to information contained in Abdulaziz's phone—information they had obtained via Pegasus. *Id.* ¶ 139. As the TAC pleads, it was due to Pegasus that the KSA learned of Abdulaziz's collaboration with prominent activist and journalist, Jamal Khashoggi, who was killed at a Saudi embassy in 2018. *Id.* ¶¶ 139, 144-45.

In December 2018, Abdulaziz filed a separate lawsuit against NSO Technologies Ltd. ("NSO"), the maker of the Pegasus software, alleging that NSO's software allowed the KSA to access his phone contents and that NSO—not Twitter—was liable for the harms he, his family, and his friends suffered. *See* RJN Ex. A ¶¶ 11-14, 16-18, 24; *see also* Order at 7 n.43 (taking judicial notice of the court records of the NSO lawsuit).

## III.   PROCEDURAL BACKGROUND

This is Abdulaziz's ***fourth*** attempt to plead claims against Twitter based on the KSA's acts of espionage and persecution. Abdulaziz filed his original complaint on October 18, 2019. ECF No. 1. Twitter moved to dismiss that complaint on December 16, 2019. ECF No. 26. On February 11, 2020, Abdulaziz filed his FAC rather than oppose Twitter's motion. ECF No. 38.

Because Abdulaziz had not cured the defects identified in Twitter's previous motion to dismiss, Twitter filed a second motion to dismiss in response to the FAC on March 12, 2020.  ECF No. 41.  Twitter's second motion to dismiss was heard on August 6, 2020.  On August 12, 2020, this Court dismissed the FAC's claims against Twitter based on several, independent grounds: (1) the FAC failed to establish Article III standing because its allegations did not plausibly establish that Twitter's alleged misconduct caused him harm; (2) Abdulaziz failed to plead ratification given that Twitter warned him and other accountholders of its rogue employees' conduct in December 2015; (3) Abdulaziz failed to plead *respondeat superior* liability because Abouammo and Alzabarah were demonstrably not acting in the scope of their employment and instead were acting as agents for the Saudi regime; (4) the December 2015 notification meant that the statute of limitations barred all but the Unfair Competition Law ("UCL") claim; (5) Abdulaziz did not plead his misrepresentation and concealment claims with particularity; (6) as to the negligent hiring, supervision, or retention claim, Abdulaziz's only allegations were conclusions, not facts; and (7) the UCL claim failed because the predicate claims failed.  *See* Order at 10-13.

On August 27, 2020, Abdulaziz filed his SAC.  ECF No. 80.  Abdulaziz's SAC failed to cure the defects identified in the Court's Order dismissing the FAC, and thus Twitter filed a third motion to dismiss on October 1, 2020.  ECF No. 83.  In apparent recognition that many of his claims lacked merit, on November 9, 2020, Abdulaziz filed a motion for leave to file an amended complaint that would dismiss the majority of his claims against Twitter: (1) violation of the Stored Communications Act, (2) violation of the UCL, (3) invasion of privacy, (4) intentional misrepresentation, (5) negligent misrepresentation, and (6) concealment.  ECF No. 89.  Abdulaziz also voluntarily dismissed his claims against Defendant McKinsey & Co and added certain other allegations to his complaint related to media reports regarding Twitter's interactions with the FBI. *Id.*  In order to promote efficiency, and pursuant to the Court's request, the parties stipulated that Abdulaziz should be permitted leave to file his Third Amended Complaint.  ECF No. 93.  The Court granted the parties' stipulation on November 12, 2020.  ECF No. 97.

On November 13, 2020, Abdulaziz filed his TAC.  ECF No. 98.  The TAC again fails to cure the defects identified in the Court's Order dismissing the FAC.  Instead, the TAC adds

1538827

1  allegations irrelevant to Abdulaziz's claims and largely repeats the same allegations that the Court

2  previously found inadequate.

3  **IV.    QUESTIONS PRESENTED**

4    Whether Abdulaziz's TAC alleges facts establishing Article III standing under Federal Rule

5  of Civil Procedure 12(b)(1) and whether it states a claim upon which relief can be granted under

6  Federal Rule of Civil Procedure 12(b)(6).

7  **V.    LEGAL STANDARD**

8    Under Federal Rule 12(b)(1), the Court must dismiss any action that lacks subject matter

9  jurisdiction.  Fed. R. Civ. P. 12(b)(1).  At the core of the Court's jurisdictional inquiry is Article

10  III's standing requirement.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).

11    In addition, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

12  plaintiff must plead facts showing that his "right to relief [rises] above the speculative level[.]"  *Bell*

13  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must show "more than a sheer

14  possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15  While the Court must accept material factual allegations as true, "[t]hreadbare recitals of the

16  elements of a cause of action, supported by mere conclusory statements, do not suffice" and

17  pleadings that are "no more than conclusions, are not entitled to the assumption of truth."  *Id*. at

18  678-79.  Furthermore, the Court need not accept the truth of any allegations that are contradicted by

19  matters properly subject to judicial notice.  *Hartman v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec.*

20  *Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d

21  961, 967 (N.D. Cal. 2010).  Finally, dismissal is proper if the complaint lacks "a cognizable legal

22  theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

23  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

24  **VI.    ARGUMENT**

25    **A.    Abdulaziz lacks standing because he fails to plead any causal nexus between
   Twitter's alleged conduct and his alleged harms.**

26    Once again, Abdulaziz fails to plead a causal nexus between Twitter's alleged 2015 conduct

27  and the harms he alleges befell him at the hands of the KSA.  Abdulaziz thus fails to establish

28

1538827

1    Article III standing, and his TAC should be dismissed in its entirety.

2    To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2)

3    that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

4    redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).

5    The plaintiff "bears the burden of establishing these elements" and "at the pleading stage, [he] must

6    clearly allege facts demonstrating each element." *Id.* (citation omitted). It is well-established that

7    the injury pled must "be fairly traceable to the challenged action of the defendant, and not the result

8    of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560-61

9    (citation omitted). Further, "the line of causation between the [alleged] illegal conduct and injury"

10    must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (concluding that a weak

11    demonstration of causation precludes Article III standing), *overruled on other grounds by Lexmark*

12    *Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014).

13    The TAC sets forth the same alleged harms pleaded in the FAC: the questioning of

14    Abdulaziz's father and brother ("in early 2016"), the loss of his brother's financial benefits (also in

15    early 2016), the imprisonment of Abdulaziz's friends in Saudi Arabia (at undisclosed times), and

16    the hacking of Abdulaziz's phone in June 2018 resulting in the compromise of his data, the raid of

17    his family home in Saudi Arabia, the imprisonment of his brothers, the persecution of his friends,

18    and Abdulaziz's withdrawal from his studies and spending four months living in hotels at some

19    point thereafter. TAC ¶¶ 95, 122, 125, 129, 135-39, 141-42.[7] As the Court previously concluded in

20    dismissing Abdulaziz's FAC, these allegations do not plausibly establish that Twitter's alleged

21    conduct caused these harms. *See* Order at 11 ("[P]laintiff does not explain how the compromise of

22    the Twitter data caused the harm to his family and friends that happened shortly after Alzabarah

23    fled to Saudi Arabia."). This is particularly so because Abdulaziz concedes that it was his ***public***

24    ***criticism*** of the Saudi government—and MBS in particular—that made him a target of the KSA's

25    harassment and persecution, and that he had been such a target for years prior to the breach of

26    _____

27    [7] In an effort to address his causation problems, Abdulaziz now alleges that he was approached by an agent of MBS between April and June 2017 and encouraged to return to Saudi Arabia. *Compare* TAC ¶ 130 *with* FAC ¶ 97. However, Abdulaziz does not allege that any harm occurred as a result of this meeting.

28

Twitter's security.  *See* TAC ¶¶ 9, 120; *see also* FAC ¶¶ 9, 15-16, 18.  Abdulaziz also still does not identify any particular Twitter information Abouammo or Alzabarah improperly accessed that would have led the KSA to target him, his friends, or his family.  Moreover, allegations of harm to third parties—and not to Abdulaziz personally—do not satisfy the Article III "injury-in-fact" requirement.  *Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires . . . that the party seeking review be himself among the injured.").  It is well-settled that an injury in fact must be "particularized," meaning that it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (collecting cases); *see also Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("[T]he Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*.") (citation omitted).  And Abdulaziz's vague allegation that the KSA's persecution "intensified" at some unspecified time "[a]fter defendants' misconduct," *see* TAC ¶ 130, is not sufficient to establish a causal relationship under Article III.  *See Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (affirming dismissal of plaintiff's claims for lack of Article III standing, because, "[m]erely asserting that [harm] occurred at an unspecified time 'after' the [defendant's alleged misconduct]—absent any other details—does not connect the dots").

Abdulaziz also fails to explain how the KSA's 2018 Pegasus malware attack on his phone is tied to access of his Twitter account information three years earlier in 2015, as opposed to both events being parts of a long, preexisting chain of persecution due to his being a well-known, public, and vocal critic of the KSA.  There is no temporal proximity, further attenuating any possible causal link.  *See* Order at 11.  The TAC attempts to explain away the three-year time gap by claiming, "on information and belief," that the KSA was unable to deploy the Pegasus malware until the spring of 2018, TAC ¶¶ 124, 135, but in his lawsuit against NSO, Abdulaziz alleges that NSO sold the Pegasus System to the KSA in June 2017 and implies that it was operational at that time.  *See* RJN Ex. A, ¶¶ 8, 48-53.[8]  Moreover, the June 2018 Pegasus malware attack occurred just ***one month***

---

[8] For instance, Abdulaziz states that "[NSO]'s representatives asked the Saudis to buy a new smartphone and provide them with its number in order to prove to them that Pegasus 3 was capable of infiltrating the phone by only knowing the mobile phone number."  RJN Ex. A, ¶ 49.

1    after Abdulaziz refused two KSA agents' demand "that Plaintiff stop criticizing KSA and MBS and

2    that he return to Saudi Arabia," which presumably refers to Abdulaziz's public criticism of the KSA

3    and MBS.  TAC ¶ 133.  Additionally, Abdulaziz still fails to explain what information in his

4    Twitter account would have prompted the KSA to hack his phone using the Pegasus malware some

5    three years later.  Abdulaziz continues to (incorrectly) allege that the KSA viewed his direct

6    messages, but he still fails to allege with specificity what information in these messages would have

7    caused the KSA to increase its persecution.  *Compare* TAC ¶ 125 *with* FAC ¶ 87.  Abdulaziz's

8    assertion that the KSA targeted his phone for hacking in 2018 because of what they learned from

9    his Twitter account in 2015 is a conclusion, not a factual allegation, that stretches "on information

10   and belief" beyond any reasonable limit of plausibility.  *See* Order at 11; *see also Iqbal*, 556 U.S. at

11   679 ("pleadings that . . . are no more than conclusions, are not entitled to the assumption of truth");

12   *Boruta v. JPMorgan Chase Bank, N.A.*, No. 19-CV-03164-WHO, 2019 WL 4010367, at *7 (N.D.

13   Cal. Aug. 26, 2019) (dismissing claims premised on "information and belief" allegations where

14   allegations lacked factual support and required drawing unreasonable inferences).

15        Because Abdulaziz fails to plead causation as required to establish Article III standing, his

16   TAC's claims should be dismissed with prejudice in their entirety.  *See, e.g.*, *Novak v. United*

17   *States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (dismissing claim for lack of standing where plaintiff

18   alleged that third parties "may well have engaged in the[] injury-inflicting actions"); *Nichols v.*

19   *Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (dismissing claim for lack of standing because

20   "Plaintiff has failed to show that his injury is 'fairly traceable' to [Defendant]").

21        **B.      Abdulaziz similarly fails to plead proximate causation.**

22        Abdulaziz's claims should also be dismissed because, under California law, negligence-

23   based claims require that a plaintiff establish proximate causation.  *See, e.g.*, *Mendoza v. City of Los*

24   *Angeles*, 66 Cal. App. 4th 1333, 1342 (1998) (applying proximate causation requirement to

25   negligent hiring and supervision claim); *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007)

26   (applying requirement to negligence claim).  The proximate causation standard imposes an even

27   higher burden than Article III's causation requirement.  *See Native Vill. of Kivalina v. ExxonMobil*

28   *Corp.*, 663 F. Supp. 2d 863, 878 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012).  And "where

1538827

1    the facts are such that the only reasonable conclusion is absence of causation, the question is one of

2    law, not of fact." *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015).  Thus,

3    Abdulaziz bears the burden of pleading proximate causation by alleging "(1) *but for* the negligence,

4    the harm would not have occurred, or (2) the negligence was a concurrent independent cause of the

5    harm." *Viner v. Sweet*, 30 Cal. 4th 1232, 1241 (2003).  Notably, a defendant's "conduct is not a

6    substantial factor in ***causing*** harm if the same harm would have occurred without that conduct."

7    *Pipitone v. Williams*, 244 Cal. App. 4th 1437, 1458 (2016) (citation omitted) (emphasis added).  For

8    the same reasons that Abdulaziz has failed to establish Article III standing, his TAC also fails to

9    satisfy the more rigorous proximate causation standard and should be dismissed in its entirety for

10   that reason as well.

       **C.**    **Because Abdulaziz waited nearly four years to file suit, his claims should be
dismissed as time-barred.**

11

12        Abdulaziz's claims are barred by the statute of limitations because Twitter notified him of

13   the state-sponsored breach of his account nearly four years before he filed suit.  Twitter sent

14   Abdulaziz two notices in December 2015—one via email and a second through the Twitter

15   application—notifying Abdulaziz that his account "may have been targeted by state-sponsored

16   actors."  *See* RJN Exs. 1-4.  These notices are properly subject to the doctrine of incorporation by

17   reference, as detailed in Twitter's RJN briefing and as recognized in this Court's previous Order.

18   *See* Order at 4 n.24.  In his TAC, Abdulaziz merely repeats the same argument that he made in his

19   FAC—that he did not "receive" the December 2015 notice, and therefore Twitter must not have

20   "sent" him the notice.  TAC ¶ 113.  But as this Court previously held, Abdulaziz's claim that "he

21   may not have received the notice" is insufficient to "meaningfully dispute that Twitter sent notices

22   in December 2015."  Order at 11; *see also Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1078

23   (9th Cir. 1999) (plaintiff's declaration that she did not see the notice did nothing to contradict

24   testimony offered by defendant that the notice had been posted).

25        Abdulaziz claims that even if he ***did*** receive the December 2015 notifications, those

26   notifications were false and misleading.  *See* TAC ¶ 113.  But Twitter's notifications were accurate

27   and sufficiently detailed to warn its accountholders without compromising the FBI's active,

28

1538827

1   confidential criminal investigation.  Twitter's three-paragraph email notification read in part:

2       . . . [W]e are alerting you that your Twitter account is one of a small group of accounts that
3       may have been targeted by state-sponsored actors.  We believe that these actors (possibly
        associated with a government) may have been trying to obtain information such as email
4       addresses, IP addresses, and/or phone numbers.

5       At this time, we have no evidence they obtained your account information, but we're
        actively investigating this matter.  We wish we had more we could share, but we don't have
6       any additional information we can provide at this time. . . .

7   RJN Ex. 1 at 1-2.  Abdulaziz's TAC puts forward assorted rationales as to why this notice was false

8   and misleading.  TAC ¶ 113.  Abdulaziz takes issue with the fact that Twitter did not specify that

9   the KSA was the "state-sponsored actor" [9] or that Twitter employees were involved, and Abdulaziz

10  also argues that Twitter's statements that recipients of the notice "may have been targeted" and that

11  "we don't have any additional information we can provide at this time" were false.  *Id.*  Twitter's

12  notification, however, was not false or misleading.  At the time, Twitter was in the early stages of

13  its investigation and was also cooperating in the FBI's ongoing, confidential criminal investigation

14  into Abouammo and Alzabarah.  *See generally Abouammo*, ECF No. 1.  Therefore, Twitter limited

15  its public communications to what it could confirm at the time, consistent with the sensitivity of its

16  internal investigation and its cooperation with the confidential FBI investigation.  Abdulaziz's

17  allegation that Twitter "deliberately" hid material information so as to avoid "upset[ing] KSA,"

18  TAC ¶ 113, belies belief and is incompatible with the DOJ's characterization of Twitter as a victim

19  in this incident.  ECF No. 53, ¶ 28.  Moreover, Abdulaziz previously raised these exact arguments

20  in his Opposition to Twitter's Motion to Dismiss Plaintiff's FAC (ECF No. 58) ("Opp. to MTD

21  FAC"), *see* Opp. to MTD FAC at 19, and he also raised several of these arguments in his FAC, *see*

22  FAC ¶ 88.  But the Court did not find any of these arguments persuasive, and his TAC pleads no

23  new facts which should cause the Court to reconsider its prior Order.  *See* Order at 11-12.

24      Abdulaziz's claims each have two-year statutes of limitations.  Cal. Civ. Proc. Code

25  § 335.1 (two-year statute of limitations "for . . . injury to . . . an individual caused by the wrongful

26  act or neglect of another"); *see Kaldis v. Wells Fargo Bank, N.A.,* 263 F. Supp. 3d 856, 867 (C.D.

27  _____

28  [9] Abdulaziz's suggestion that because Twitter's notifications did not explicitly name the KSA, he
    had no idea *which* state might have sponsored the intrusion of his account, is wholly implausible
    given his complaints' detailed allegations about the KSA's years-long persecution of him brought
    about by his years-long public criticism of the KSA.

1   Cal. 2017) (applying two-year period for negligent hiring claim); *So v. Shin*, 212 Cal. App. 4th

2   652, 662 (2013) (applying two-year period for general negligence claim).  Because Twitter

3   notified Abdulaziz of the state-sponsored breach of his account in December 2015 nearly four

4   years before he filed suit, *see* RJN Exs. 1-4, his claims should be dismissed with prejudice as

5   time-barred.  Statutes of limitations exist to protect defendants from having to "defend[] stale

6   claims, where factual obscurity through the loss of time, memory or supporting documentation

7   may present unfair handicaps" and to encourage plaintiffs to pursue their claims diligently.  *Fox v.*

8   *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).  And "[a] defendant is permitted to raise

9   a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears

10  on the face of the complaint and any materials the court is permitted to take judicial notice of."

11  *Hernandez v. Sutter W. Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *2 (N.D. Cal. Aug.

12  26, 2010) (granting motion to dismiss on statute of limitations grounds based on judicially noticed

13  dates); *see also McGowan v. Weinstein*, No. 2:19-cv-09105-ODW, 2020 WL 7210934, at *15

14  (N.D. Cal. Dec. 7, 2020) (holding that plaintiff could not plead facts contradictory to an article

15  incorporated by reference in an effort to circumvent the statute of limitations).

16      As this Court previously held, by waiting almost four years from the time he was informed

17  of the state-sponsored targeting of his account, Abdulaziz forfeited his right to bring these claims.

18  Order at 12 ("The December 2015 notice also means that all claims but the UCL claim are barred

19  by the statute of limitations."); *see also Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030,

20  1038 (C.D. Cal. 2003) ("[P]laintiff is held to discover her cause of action when she suspects or

21  should suspect that her injury was caused by wrongdoing, that someone has done something

22  wrong to her.").  Abdulaziz's TAC does not plead any new allegations that would save these

23  claims from the Court's previous ruling.

24      **D.    Abdulaziz's claims are barred by Twitter's Terms of Service.**

25      Abdulaziz's claims should be dismissed for the additional reason that they are barred by the

26  Limitation of Liability clause in Twitter's Terms of Service ("TOS").  By signing up for Twitter,

27  and by continuing to use the service, Abdulaziz agreed that the TOS "govern[ed his] access to and

28  use of [Twitter's] Services."  *See* RJN Ex. B at 1; Twitter's Supplemental Request for Judicial

1538827

1   Notice in Support of Its Motion to Dismiss Plaintiff's FAC (ECF No. 61) ("Supp. RJN") Exs. 1A-

2   10A; *see also* TAC ¶ 149 ("Plaintiff was required to assent to Twitter's Terms of Service (TOS) as

3   a condition of using Twitter.")  Twitter's TOS includes a Limitation of Liability clause that bars

4   Abdulaziz from asserting liability against Twitter for any damages resulting from "unauthorized

5   access, use or alteration of [his] transmissions or content" on any theory of liability, including "tort

6   (including negligence)."[10]  *See* RJN Ex. B. at 8-9; *see also* Supp. RJN Exs. 1A-10A.

7          While a limitation of liability clause may not exculpate a party from liability for intentional

8   torts under California law, *see* Cal. Civ. Code § 1668, a contractual limitation on liability is

9   otherwise fully enforceable, including for negligence-based tort claims.  *See Bass v. Facebook, Inc.*,

10  394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019) (noting that where a clause explicitly refers to

11  limiting liability for negligence causes of action, such a clause may be enforced with respect to

12  negligence claims).  Limitation of liability clauses like Twitter's "have long been recognized as

13  valid in California."  *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118,

14  1126 (2012) (citation omitted) (involving contract and negligence claims).  Moreover, enforcement

15  of such clauses has been found particularly "appropriate when one party is offering a service for

16  free to the public" or a service that is non-essential.  *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118,

17  125 (2015); *see also Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018)

18  (upholding district court's dismissal of claim based on YouTube's "limitation of liability provision"

19  noting that "because YouTube offers its video streaming services at no cost to the user, it has a

20  valid commercial need to limit liability" and noting that the service is not essential in that

21

22  _____

    [10] Abdulaziz alleges that a "reasonable reader" would interpret the TOS's Limitation of Liability
23  clause as indicating that "Twitter will not deny liability for the loss of private information so long
    as the user has a reasonably strong password." TAC ¶ 149.  But there is no language in the TOS
24  supporting Abdulaziz's implausible interpretation.  *See* RJN Ex. B; Supp. RJN Exs. 1A-10A.  The
    TOS's password section is entirely separate from and unrelated to the Limitation of Liability clause.
25  *Compare* RJN Ex. B. at 2 *with id.* at 8-9.  Encouraging people to use strong passwords does not
    imply any security guarantee, particularly given Twitter's explicit disclaimer to the contrary in its
26  Limitation of Liability clause.  This Court need not accept Abdulaziz's description of Twitter's
    TOS and instead may look to the TOS itself.  *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d
27  187, 196 (2d Cir. 2005) ("Insofar as the complaint relies on the terms of Cablevision's customer
    agreement . . . we need not accept its description of those terms, but may look to the agreement
28  itself."); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (considering
    the contents of Zimride's TOS and Privacy Policy).

1538827

1  "reasonably available alternatives exist"); *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 621-22

2  (1996) (upholding contractual release for ski equipment services and noting that, "[s]kiing, like

3  other athletic or recreational pursuits, however beneficial, is not an essential activity"). Here,

4  Twitter's service is and always has been offered for free and is not an essential service. *See*

5  *Darnaa, LLC,* 756 F. App'x at 676.[11]

6        Accordingly, because the Limitation of Liability clause in Twitter's TOS bars both of

7  Abdulaziz's claims, his TAC should be dismissed in its entirety and with prejudice.

8       **E.**    **Abdulaziz's negligent supervision and retention claim fails because he does not plead sufficient facts to support the claim.**

9        Abdulaziz alleges that Twitter negligently supervised and retained Abouammo and

10  Alzabarah. But there can be no liability for negligent supervision "in the absence of knowledge by

11  the principal that the agent or servant was a person who could not be trusted to act properly without

12  being supervised." *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000) (quoting

13  *Noble v. Sears, Roebuck & Co.*, 33 Cal. App. 3d 654, 664 (1973) (reversing denial of a demurrer to

14  a negligent supervision claim)). The same is true of negligent retention: Abdulaziz must establish

15  that Twitter "knew or should have known that hiring [or retaining] the employee created a

16  ***particular risk or hazard*** and that ***particular harm*** materialize[d]." *Doe v. Capital Cities*, 50 Cal.

17  App. 4th 1038, 1054 (1996) (emphasis added). As with his prior complaints, Abdulaziz still does

18  not plead any facts that Twitter knew or should have known Abouammo or Alzabarah would

19  become agents of the KSA; that Twitter was aware of their improper conduct prior to December

20  2015; or that Twitter retained them after learning what they had done. To the contrary, Abdulaziz

21  alleges that as soon as Twitter became aware of Abouammo and Alzabarah's activities, Twitter took

22

23  [11] Abdulaziz's TAC argues that he lacked a reasonable alternative to Twitter because Twitter was the most popular social media platform for Saudis to spread political ideas. *See* TAC ¶¶ 152-56.

24  The fact that Twitter may have been popular, however, is not evidence that no reasonable alternatives existed. In *Darnaa, LLC*, the Ninth Circuit rejected a similar argument by the plaintiff

25  that YouTube was the "only viable choice" for music videos, finding that there were "reasonably available alternatives" even if they were "not equally dominant or popular." 756 F. App'x at 676.

26  Here, there were and have been myriad alternative forms of electronic communication and publication throughout the time period Abdulaziz has used Twitter, including messaging services

27  such as email, Facebook Messenger, Signal, and WhatsApp, social media platforms such as Facebook, Instagram, and Reddit, blogging services like Tumblr, YouTube, and WordPress, and

28  websites too numerous to recount here.

1538827

1    action and removed Alzabarah from his position.[12]  *See* TAC ¶ 79.

2         This Court previously held that Abdulaziz had failed to state a claim for negligent hiring,

3    supervision, and retention as his allegations "that there were 'red flags' and known risks—are

4    conclusions, not facts."  Order at 12.  Abdulaziz has not cured this deficiency.  He instead further

5    packs his TAC with allegations that Twitter and other "tech companies" had previously been targets

6    of hacking, *compare* TAC ¶¶ 20-25 *with* FAC ¶¶ 39-42,—but as before, Twitter's knowledge that

7    hacking is a possibility is hardly enough for Twitter to have known that two particular employees,

8    Alzabarah and Abouammo, would engage in such conduct, as required to state a claim under the

9    caselaw.  Abdulaziz otherwise relies on bald and conclusory allegations that Abouammo and

10   Abdulaziz's conduct must have set off alerts or "red flags" that were ignored by Twitter.  *Id.* ¶¶ 53,

11   64, 67, 87, 93.  But these allegations are contradicted by yet others in the TAC that Twitter had no

12   such alert system.  *See id.* ¶ 35 ("On information and belief, at all relevant times, Twitter did not

13   have a practice or policy of periodically investigating whether employees were accessing or had

14   accessed private user data"); ¶ 50(d) ("Twitter was not utilizing tools that detect unauthorized or

15   anomalous behavior by employees or rogue insider activities with respect to this data"), ¶ 73

16   (alleging Twitter lacked safeguards to alert management of unauthorized access), ¶ 79 (Twitter was

17   "unaware of Abouammo's and Alzabarah's activities").  And Abdulaziz's contrary allegation that

18   "alerts . . . were sounded in Twitter's infrastructure . . . [but] Twitter took no remedial action in

19   response to the unauthorized access," *id.* ¶ 46, is conclusory, as well as implausible, given that the

20   TAC also alleges that Twitter did in fact take remedial action—by immediately removing

21   Alzabarah and notifying impacted accountholders—as soon as Twitter became aware of the

22   misconduct, *see id.* ¶ 79.  "[M]ere conclusory statements" and implausible allegations are not

23   enough to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678-79.

24        As Abdulaziz does not allege any facts that Twitter had actual knowledge or cause to

25   suspect that Abouammo or Alzabarah would become—or had become—agents of the KSA, his

26   claim for negligent supervision and retention should be dismissed with prejudice.

27

28   _____
     [12] Abouammo had already left Twitter by that point.  TAC ¶ 63.

1

## VII.    CONCLUSION

2          The TAC is Abdulaziz's fourth attempt to state a claim that will survive dismissal under

3    Rules 12(b)(1) and 12(b)(6).  For the reasons set forth above, he has not done so, and because he

4    has sued the wrong party, he cannot do so.  Twitter respectfully requests that the Court dismiss the

5    TAC in its entirety and with prejudice.

6

7     Dated:  December 18, 2020                          KEKER, VAN NEST & PETERS LLP

8

9                                         By:    /s/ Benjamin Berkowitz
                                                 BENJAMIN BERKOWITZ
10                                               KHARI J. TILLERY
                                                 ANJALI SRINIVASAN
11                                               RYLEE KERCHER OLM

12                                               Attorneys for Defendant
                                                 TWITTER, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1538827