KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
KHARI J. TILLERY - # 215669
ktillery@keker.com
ANJALI SRINIVASAN - # 304413
asrinivasan@keker.com
RYLEE KERCHER OLM - # 318550
rolm@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OMAR ABDULAZIZ,<br><br>        Plaintiff,<br><br>    v.<br><br>TWITTER, INC.,<br><br>        Defendant. | Case No. 3:19-cv-06694-LB<br><br>**DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date:      February 11, 2021<br>Time:     9:30 a.m.<br>Dept.:    Courtroom B- 15th Floor<br>Judge:   Hon. Laurel Beeler<br><br>Date Filed:  October 18, 2019<br><br>Trial Date:  None Set |

1630794

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

    A.   Abdulaziz lacks Article III standing because he fails to plead causation. ...............2

        1.   Abdulaziz's argument ignores the KSA's persecution of him prior to 2015 as well as his asylum claims premised on that persecution. ...........3

        2.   Abdulaziz's proffered timeline is misleading and thus his effort to create temporal proximity between his alleged harms suffered in 2018 and the KSA's alleged breach of Twitter's security in 2015 fails............................................................................................................5

        3.   Abdulaziz fails to establish that the persecution of third parties in 2015 and 2016 was caused by the KSA's access of Twitter account information, and he lacks standing to assert those harms. ...........................7

        4.   The TAC fails to plausibly plead any causal connection between the Pegasus attack and the KSA's access of Twitter account information.........................................................................................................8

    B.   Abdulaziz similarly fails to plead proximate causation. ........................................10

    C.   All of Abdulaziz's claims are time-barred. .............................................................11

    D.   Abdulaziz's claims are barred by Twitter's Terms of Service. ..............................13

    E.   Abdulaziz's negligent supervision and retention claim fails because it is unsupported by well-pleaded facts............................................................................18

III. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED............19

IV.  CONCLUSION....................................................................................................19

i

DEFENDANT TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Federal Cases</u>

4

*Adkins v. Facebook, Inc.*,
    No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ...................................17

5

6

*Al-Aulaqi v. Obama*,
    727 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................................8, 9

7

8

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
    75 F.3d 1401 (9th Cir. 1996) ...................................................................................................13

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................19

10

11

*Daniel v. Nat'l Park Serv.*,
    891 F.3d 762 (9th Cir. 2017) .....................................................................................................2

12

*Darnaa, LLC v. Google LLC*,
    756 F. App'x 674 (9th Cir. 2018) ......................................................................................14, 17

13

14

*Dilettoso v. Potter*,
    243 F. App'x 269 (9th Cir. 2007) ..............................................................................................7

15

16

*Garamendi v. SDI Vendome S.A.*,
    276 F. Supp. 2d 1030 (C.D. Cal. 2003) ...................................................................................12

17

*Hernandez v. Sutter W. Capital*,
    No. C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010)....................................11

18

19

*Lujan v. Defs of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................................7

20

21

*Marchisheck v. San Mateo Cty.*,
    199 F.3d 1068 (9th Cir. 1999) ..................................................................................................12

22

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...................................................................................................2

23

24

*Mehr v. Federation Internationale de Football Assoc.*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...................................................................................11

25

26

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ...................................................................................................9

27

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ............................................................................................13, 14

28

ii

DEFENDANT TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

*Soltani v. W. & S. Life Ins. Co.*,
   258 F.3d 1038 (9th Cir. 2001) .................................................................................14

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016).........................................................................................7

**State Cases**

*Akin v. Business Title Corp.*,
   264 Cal. App. 3d 153 (1986) ............................................................................17

*Doe v. Capital Cities*,
   50 Cal. App. 4th 1038 (1996) ...........................................................................18

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
   209 Cal. App. 4th 1118 (2012) ....................................................................14, 15

*Gardner v. Downtown Porsche Audi*,
   180 Cal. App. 3d 713 (1968) ............................................................................17

*Gavin W. v. YMCA Metropolitan Los Angeles*,
   106 Cal. App. 4th 662 (2003) ...........................................................................17

*Genisman v. Carley*,
   29 Cal. App. 5th 45 (2018) ...............................................................................12

*Henrioulle v. Marin Ventures, Inc.*,
   20 Cal. 3d 512 (1978) .......................................................................................17

*Juarez v. Boy Scouts of Am. Inc.*,
   81 Cal App. 4th 377 (2000) ..............................................................................18

*Landeros v. Flood*,
   17 Cal. 3d 399 (1976) .......................................................................................10

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) ...........................................................................14

*Okura v. United States Cycling Fed'n*,
   186 Cal. App. 3d 1462 (1986) ..........................................................................17

*Pelletier v. Alameda Yacht Harbor*,
   188 Cal. App. 3d 1551 (1986) ..........................................................................17

*Pipitone v. Williams*,
   244 Cal. App. 4th 1437 (2016) .........................................................................11

*Ra v. Super. Ct.*,
   154 Cal. App. 4th 142 (2007) .............................................................................8

iii

DEFENDANT TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

*Shih v. Starbucks Corp.*,
    53 Cal. App. 5th 1063 (2020) ...........................................................................................10

*Thing v. La Chusa*,
    48 Cal. 3d 644 (1989) .........................................................................................................8

*Tunkl v. Regents of University of California*,
    60 Cal. 2d 92 (1963) ..................................................................................................16, 17

*Vilner v. Crocker National Bank*,
    89 Cal. App. 3d 732 (1979) ..............................................................................................17

*Viner v. Sweet*,
    30 Cal. 4th 1232 (2003) ..............................................................................................10, 11

*Viotti v. Giomi*,
    230 Cal. App. 2d 730 (1964) ............................................................................................15

**State Statutes**

Cal Civ. Proc. Code § 335.1 ......................................................................................................11

Cal Civ. Proc. Code § 1668 ...............................................................................................16, 18

**Other Authorities**

Immigration and Refugee Protection Act, 2001 S.C., Chapter 27, § 96 (Can.)..............................4

DEFENDANT TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

## I.       INTRODUCTION

Plaintiff Omar Abdulaziz's Opposition fails to articulate any well-pleaded factual or legal basis why his Third Amended Complaint ("TAC") should not be dismissed with prejudice.

Abdulaziz is a prominent, vocal critic of the Kingdom of Saudi Arabia ("KSA") and Mohammed bin Salman ("MBS").  As Abdulaziz alleges in his TAC, and in his prior complaints against Twitter, the KSA—and MBS in particular—have a documented record of detaining, interrogating, and persecuting dissidents like Abdulaziz.  Moreover, the KSA's harassment and persecution of Abdulaziz, which led Abdulaziz to seek political asylum in Canada in 2013, began years before the KSA's alleged improper access of his Twitter account information.

As part of this established pattern of targeting and persecuting political dissidents, the TAC alleges that in 2014 and 2015, the KSA recruited two Twitter employees to illegally access certain Twitter account information, including Abdulaziz's, without Twitter's knowledge or authorization.  Three years later, in 2018, as Abdulaziz continued to rise in prominence as a public critic of the KSA, he alleges the KSA used Israeli-made Pegasus malware to hack his phone, allowing the regime full and direct access to his device and communications.  Abdulaziz also alleges that throughout this time period, the KSA and MBS harassed and persecuted his family and friends.

As set forth in Twitter's opening brief, the TAC fails to state a claim for multiple reasons, a fundamental one being that Abdulaziz has sued the wrong party.  Abdulaziz seeks redress for the persistent state-sponsored persecution he outlines in his complaint.  But Twitter did not spy on Abdulaziz's account, harass him, persecute his family and friends, or invade his phone with spyware.  As Abdulaziz himself alleges in the TAC, these actions were undertaken by the KSA and MBS, not by Twitter.  These flaws in Abdulaziz's claims led this Court to dismiss Abdulaziz's First Amended Complaint ("FAC") in its entirety for lack of Article III standing and failure to state a claim.

The TAC is Abdulaziz's ***fourth*** attempt to plead claims against Twitter based on the KSA's acts of espionage and political persecution.  But Abdulaziz's TAC and Opposition do not meaningfully address the fundamental problems this Court identified in dismissing Abdulaziz's

1630794

FAC.  Instead, Abdulaziz spends both the TAC and his Opposition speculatively hypothesizing that Twitter (a publicly owned company based in the United States) has been acting in cahoots with the KSA and against the FBI, despite a federal criminal investigation against the KSA's alleged agents clearly premised on Twitter's cooperation.

As set forth below and in Twitter's opening papers, the problems with the TAC are fundamental and cannot be cured by further amendment.  The TAC should be dismissed in its entirety and with prejudice.

## II.    ARGUMENT

### A.    Abdulaziz lacks Article III standing because he fails to plead causation.

Abdulaziz's TAC fails to establish Article III standing because it fails to plead "specific factual allegations" that plausibly "demonstrate[e] that [the] injury-in-fact is . . . fairly traceable to the challenged action."  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2017).[1]  While Abdulaziz's Opposition and TAC engage once again in hypothetical and counterfactual speculation about why he believes he was targeted by the KSA, a plaintiff may not "rely on a bare legal conclusion" nor "engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted).  Abdulaziz's TAC fails to establish Article III standing because he fails to plausibly plead how Twitter's allegedly negligent conduct ***caused*** him to suffer the harms he alleges the KSA inflicted against him.

In its Order dismissing Abdulaziz's FAC, this Court held that the FAC failed to establish causation because (1) Abdulaziz failed to "explain how the compromise of the Twitter data caused the harm to his family and friends [by the KSA]" in part because Abdulaziz "is a political dissident with an active social-media presence who suffered persecution before the compromise of his Twitter data"; and (2) Abdulaziz's allegation that the KSA's later malware attack against him was related to the KSA's breach of Twitter's security three years earlier was "a conclusion,

---

[1] Contrary to Abdulaziz's assertion, the causation requirement is only "relaxed" where "a plaintiff's claims rest on a procedural injury"—i.e., where a plaintiff alleges that a federal agency failed to follow a required procedure which caused harm to the plaintiff.  *See id.* (citation omitted).  There is no procedural injury at issue in this case.

not a fact allegation" that lacked temporal proximity.  Order Granting Defendants' Motions to Dismiss (ECF No. 76) ("Order") at 11.  As explained in Twitter's opening brief, Abdulaziz's TAC failed to address either of these deficiencies in pleading causation.  *See* Twitter's Motion to Dismiss Plaintiff's TAC (ECF No. 99) ("Mot.") at 9-12.

In his Opposition, Abdulaziz acknowledges the Court's prior ruling, but once again fails to point to any well-pleaded facts to establish that the KSA's decision to target him or his family was based on information it obtained from Twitter.  Instead, Abdulaziz's Opposition makes two flawed arguments: *First*, he argues that his prior political activism could not have caused the KSA to persecute him because prior to the KSA's alleged access of his Twitter account information in 2015, the KSA had ***never*** previously persecuted him except to withhold certain financial assistance, and that it was only ***after*** the KSA's intrusion of his Twitter account (itself arguably an act of persecution) that he began to be persecuted.  *Second*, he argues that there is temporal proximity between the harms he and his family suffered and the KSA's alleged access of his Twitter account information, because the persecution of his friends and family members inexplicably "intensified" shortly thereafter, culminating in the KSA's planting of Pegasus malware on his phone three years later.  Both arguments fail.

### 1.   Abdulaziz's argument ignores the KSA's persecution of him prior to 2015 as well as his asylum claims premised on that persecution.

Abdulaziz now argues that he and his family were never persecuted by the KSA prior to December 2015, other than the KSA stopping his financial assistance, and that this satisfactorily pleads causation.  Opp. at 5.  He thus asserts that any persecution beginning in December 2015 ***must have been*** related to the compromise of his Twitter account information.  *See id.*  But this argument is refuted by his own pleadings, which acknowledge that the KSA had already begun persecuting him many years earlier, before he applied for asylum in Canada in 2013.

Abdulaziz contends in his Opposition that "[a]lthough Canada granted Plaintiff asylum in February 2014, the ***only*** persecution he suffered up to that point was [the] KSA stopping Plaintiff's financial assistance."  Opp. at 5 (emphasis added).  But this argument ignores Abdulaziz's own allegations.  As the TAC makes plain, Abdulaziz applied for asylum in 2013

1630794

because "[h]e was afraid that if he returned to Saudi Arabia, he would be persecuted (e.g., imprisoned, tortured or killed)."  TAC ¶ 120.  This is consistent with Abdulaziz's prior complaints, which likewise state that "Saudi authorities retaliated against Plaintiff for his political activities by harassing him so severely that he applied for asylum in Canada on or about December 31, 2013."  FAC (ECF No. 38) ¶ 15; *see also* Original Complaint (ECF No. 1) ("OC") ¶¶ 9-10 ("Plaintiff was especially vocal about the grave violations of human rights in KSA, the disregard for Saudi citizens, and their rights and freedoms.  Saudi authorities retaliated by harassing Plaintiff.  As a result, Plaintiff applied for asylum[.]").

Abdulaziz's new argument is also contradicted by the allegations in his parallel lawsuit against NSO Technologies Ltd. ("NSO"), the maker of the Pegasus software, which also acknowledge that Abdulaziz was persecuted by the KSA prior to 2015.  *See* Twitter's Request for Judicial Notice in Support of Its Motion to Dismiss Plaintiff's FAC (ECF No. 42) ("RJN"), Ex. A ¶ 16 ("Due to his political involvement and activism . . . the Plaintiff became a target for harassment by government entities in the Kingdom.  Due to this harassment, and due to the political persecution that he suffered at the hands of the government entities in the Kingdom, the Plaintiff filed an application for asylum in Canada[.]").[2]  And, of course, in order to have been granted asylum in 2014, Abdulaziz had to have proven that he had a "well-founded fear of persecution."[3]  Thus, Abdulaziz's assertion in his Opposition that the KSA's persecution of him did not begin until after the KSA's alleged access of his Twitter account information in 2015 is flatly refuted by the TAC and his other pleadings.  As this Court previously determined, because Abdulaziz "suffered persecution ***before*** the compromise of his Twitter data (shown by Canada's granting him political asylum in February 2014)," he fails to plausibly establish that Twitter's alleged conduct caused his alleged harms.  *See* Order at 11 (emphasis added).

---

[2] *See also* Order at 7 n.43 (taking judicial notice of the court records of the NSO lawsuit).

[3] *See* Immigration and Refugee Protection Act, 2001 S.C., ch. 27, § 96 (Can.) (defining a refugee as a person "who, by reason of a well-founded fear of persecution for reasons of race, religion, nationality, membership in a particular social group or political opinion, [] is outside of each of their countries of nationality and is unable or, by reason of that fear, unwilling to avail themself of the protection of each of those countries.").

1630794

### 2. Abdulaziz's proffered timeline is misleading and thus his effort to create temporal proximity between his alleged harms suffered in 2018 and the KSA's alleged breach of Twitter's security in 2015 fails.

In an effort to address the three year delay between any KSA harm he allegedly suffered and the intrusion of his Twitter account, and the resulting lack of temporal proximity, Abdulaziz's Opposition claims that the KSA's persecution against him "gradually intensified" from December 2015 onwards and led up to the KSA's planting of the malicious software on his phone three years later. *See* Opp at 6. He repeatedly argues this "gradual intensification" began only after December 2015 and can only be explained by the KSA's breach of Twitter's security because "despite no change in Plaintiff's behavior and nothing out of the ordinary happening apart from Twitter's data breach, [the] KSA suddenly escalated its persecution of Plaintiff in an unprecedented manner." Opp. at 13; *see also id.* at 9, 12. But this timeline is contradicted by the TAC and is insufficient to establish causation because it omits that the KSA's persecution began prior to 2015, and it ignores critical facts about the relevant time period.

Between 2015 and 2018, Abdulaziz's public profile increased, as did his social media criticism of the Saudi regime. Abdulaziz's own allegations describe how he became a more vocal critic of the KSA after he was granted asylum in 2014. FAC ¶ 16 ("In response to [the KSA's] political persecution, Plaintiff increased his political activities as a harsh critic of the rule of the KSA" and by 2015 he had nearly "200,000 Twitter followers."). In addition to becoming more vocal on Twitter, around this time, Abdulaziz also began a YouTube channel "on which he broadcast[] his political views." FAC ¶ 16. Abdulaziz's Opposition omits his rise in prominence and escalating public criticism of the KSA from its proffered timeline.

Further, Abdulaziz's claim that beyond the KSA's alleged breach of his Twitter account, "nothing out of the ordinary" happened in 2015, also ignores the reality of what was happening in Saudi Arabia at the time: one of the primary targets of Abdulaziz's public criticisms, MBS, rose to power in 2015 when his father ascended the throne. Indeed, in April 2015 MBS was appointed deputy crown prince, second deputy prime minister, and president of the Council of Economic

5

DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

and Development Affairs.[4]   After coming to power in 2015, the TAC explains that it was MBS who personally directed the alleged persecution of Abdulaziz.  *See, e.g.*, TAC ¶¶ 94-96 (referring to "MBS' plan to silence Plaintiff by threatening . . . his brother [and] his friends"), 130-137 ("The two [KSA] agents told Plaintiff that MBS was not happy with Plaintiff's political activities and criticisms against KSA in general and MBS in particular."), 144; SAC ¶¶ 130 ("McKinsey prepared a report which identified the three most influential social media critics of MBS's austerity plan (one of the three was Plaintiff)"), 136, 141 ("MBS is well known for employing a technique known as 'torture by proxy' whereby MBS targets Saudi-residing friends and family members of a dissident or political opponent who lives outside of Saudi Arabia"), 148-49.  The Opposition completely ignores MBS's rise to power in 2015 and the TAC's acknowledgements that it was MBS who "was not happy with Plaintiff's political activities and criticisms."  TAC at ¶ 133.

Additionally, Abdulaziz's timeline omits the fact that in December 2016, a McKinsey report, which Abdulaziz alleges was given to the agents of MBS and/or to MBS himself, identified Abdulaziz as "[one of] the three most influential social media critics of MBS' austerity plan" and that "[e]very single critic exposed in the McKinsey report has been imprisoned except for Plaintiff[,] [who] has been safe only because he is in Canada."  SAC ¶¶ 130, 136-37, 141-2.  In Abdulaziz's SAC, he even alleges that the McKinsey report is "why MBS has imprisoned and tortured family, friends, and associates."  *Id.* ¶ 141.

Abdulaziz's attempt to manufacture temporal proximity and establish some kind of causal link directly between the intrusion of his Twitter account information and the harms he and his family later suffered over a three-year period is accordingly not based on well-pleaded facts.  Indeed his argument is contradicted by the facts pleaded in his TAC and in his prior complaints—all of which suggest that there was a long-sustained KSA persecution campaign against him that began well before 2015 and continued well after, due to his open and public criticisms of the Saudi regime.

---

[4] *Saudi Crown Prince Mohammed bin Salman, power behind the throne*, BBC News (October 6, 2020), https://www.bbc.com/news/world-middle-east-40354415.

1630794

### 3. Abdulaziz fails to establish that the persecution of third parties in 2015 and 2016 was caused by the KSA's access of Twitter account information, and he lacks standing to assert those harms.

Of course, temporal proximity alone is insufficient to establish causation. *See Dilettoso v. Potter*, 243 F. App'x 269, 272-73 (9th Cir. 2007) (collecting cases). Even if Abdulaziz's evasive timeline were accepted, the TAC fails to connect any alleged persecution to the KSA's access of Abdulaziz's Twitter account information. The Opposition points to new allegations that Abdulaziz's family and friends may have been interrogated and harassed in 2015 and 2016, but the TAC still fails to plead facts establishing that these events were caused by Twitter or by the KSA's access of Twitter account information.

Among its failings, the TAC fails to describe any particular information the two KSA operatives, Ali Alzabarah and Ahmed Abouammo, improperly accessed that caused the KSA to interrogate Abdulaziz's family or friends. And Abdulaziz has pleaded no facts suggesting that the KSA ever mentioned information it obtained from Twitter account data in the course of such interrogations. *Cf.* TAC ¶ 139. Rather, according to Abdulaziz, such abuses are a common KSA tactic used to discourage dissident activity. *See* TAC ¶¶ 9, 138. Moreover, Abdulaziz's assertion that Alzabarah's return to Saudi Arabia in December 2015 triggered his becoming a KSA target—and therefore the Twitter intrusion is to blame—is contradicted by his other allegation that the KSA had begun targeting him years earlier, *see, e.g.*, *id.* ¶ 120, and by his claim that "it would have taken many months if not years for KSA intelligence members to review and analyze the [Twitter] data to determine who they would target," *id.* ¶ 123.

Further, as explained in Twitter's opening brief, Abdulaziz also lacks standing to assert claims on behalf of third parties. *See Lujan v. Defs of Wildlife*, 504 U.S. 555, 563 (1992) ("[T]he 'injury in fact' test requires . . . that the party seeking review be himself among the injured."). While Abdulaziz seeks to distinguish the U.S. Supreme Court's decision in *Lujan* on its particular facts, it is well-settled law that an injury-in-fact "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (collecting cases). In response to his failure to allege any "personal and individual" injury during the 2015 to 2017 time period, Abdulaziz vaguely argues that he suffered emotional distress as a result of Twitter's

7

1630794

alleged conduct, Opp. at 9, but the TAC contains no specific allegation that Abdulaziz suffered any emotional distress as a result of the KSA's interrogations of his friends and family. *See* TAC ¶¶ 122, 162-63, 167-68. Moreover, a plaintiff may only recover for emotional distress based on negligence to another where they were a bystander to the alleged negligence; that is they must be "present at the scene of the injury-producing event at the time it occurs and [be] aware that it is causing injury to the victim." *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989). Abdulaziz has not pleaded that he was a bystander to any of the harassment of or harms to his family, *see generally* TAC, and he therefore cannot recover for those harms. *See Ra v. Super. Ct.*, 154 Cal. App. 4th 142, 152 (2007) ("It is the traumatic effect of the perception of the infliction of injury on a closely related person . . . that is actionable, not the observation of the consequences of the occurrence . . . which, while potentially stressful, is insufficient to cause legally cognizable harm.") (citations omitted); *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 25 (D.D.C. 2010) (holding that a father failed to establish an "injury-in-fact" sufficient to satisfy Article III based on emotional harm he would suffer as a result of any physical injury to, or death of, his son). Not only has Abdulaziz failed to plead a causal connection between the interrogation and harassment of his family and friends to the KSA's access of his Twitter account, but that interrogation and harassment also does not establish any injury-in-fact to him personally, as required by Article III. Thus, Abdulaziz's efforts to establish causation through claims of KSA activities targeting others is insufficient to establish Article III standing.

>   **4.    The TAC fails to plausibly plead any causal connection between the Pegasus attack and the KSA's access of Twitter account information.**

Not only does Abdulaziz's TAC fail to establish any causal connection between the KSA's alleged intrusion of his Twitter account and the interrogation of his family and friends in 2015 and 2016, but he also fails to provide any plausible causal link between the intrusion and the 2018 Pegasus attack. Indeed, his allegations plainly suggest the Pegasus malware attack was a result of Abdulaziz's public criticisms of the KSA and MBS. For instance, the Pegasus malware attack occurred just ***one month*** after Abdulaziz refused two KSA's agents' "demand[] that Plaintiff stop criticizing [the] KSA and MBS and that he return to Saudi Arabia" in May 2018.

8

1630794

TAC ¶ 133.  The agents were clearly referring to Plaintiff's **public** criticism—"The two agents told Plaintiff that MBS was not happy with Plaintiff's political activities and criticisms against KSA in general and MBS in particular."  *Id.*  Notwithstanding the meeting with the two KSA agents in May 2018, "Plaintiff continued his political activities."  FAC ¶ 100.[5]

Further evidencing that the Pegasus malware was unrelated to the KSA intrusion of his Twitter account is Abdulaziz's statement that he is "unaware of other Saudi dissident Twitter users [that the] KSA targeted with Pegasus," Opp. at 4; TAC ¶¶ 125, 140, yet he is aware of two "prominent" Saudi dissidents who are **not** Twitter users who the KSA attacked with Pegasus during the "same period" that it targeted Abdulaziz, Opp. at 4, n.7; TAC ¶ 135.  In short, Abdulaziz fails to explain how the Pegasus malware attack in 2018, or any other KSA persecution prior to that, were tied to access of his Twitter account information in 2015.  Instead, and as the Pegasus attacks against non-Twitter users show, the alleged events were part of a long, preexisting chain of persecution against Abdulaziz unrelated to Twitter, but due to his being a well-known critic of the KSA and MBS.  As before, "the [P]laintiff's allegation that [the Pegasus malware hack of his phone] is related to the Twitter breach is a conclusion, not a fact allegation." Order at 11.

In sum, the TAC fails to plausibly plead that Twitter's alleged conduct caused the harm inflicted on him by the KSA, and thus his claims should be dismissed with prejudice in their entirety.  *See, e.g.*, *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (dismissing claim for lack of standing where "third parties may well have engaged in their injury-inflicting actions even in the absence of the [defendant's] challenged conduct").

---

[5] Abdulaziz now claims he restricted his social media presence from January to July 2018, *see* Opp. at 6-7, but by 2018 the KSA already considered Abdulaziz to be a problematic, prominent dissident with a large social media following, as shown by the McKinsey report, among other things.  *See* FAC ¶¶ 16, 30-32; SAC ¶¶ 130-41.

9

1630794

### B.    Abdulaziz similarly fails to plead proximate causation.[6]

The TAC also fails to meet the more rigorous proximate causation standard required for negligence-based claims for the same reasons it fails to establish Article III standing.  Under California law, a plaintiff's negligence claim must be dismissed where the defendant's conduct is "too remotely connected with [the plaintiff's] injuries to constitute their legal cause."  *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063, 1069 (2020) (citation omitted) (dismissing negligence claims as a matter of law).[7]  This is such an instance.

Abdulaziz argues that under the substantial factor test, Twitter's conduct was a concurrent independent cause of Abdulaziz's harm.  Opp. at 21.  But this is only applicable where there are "multiple forces operating at the same time and ***independently***, ***each*** of which would have been ***sufficient by itself to bring about the harm***."  *Viner v. Sweet*, 30 Cal. 4th 1232, 1240 (2003) (emphasis added).  Here, Twitter's alleged failure to prevent state-sponsored espionage was not sufficient by itself to bring about the separate persecution engaged in by the KSA.  As discussed above, Abdulaziz fails to identify any specific Twitter information that Alzabarah or Abouammo improperly obtained that led to the KSA's actions.  To the contrary, as shown by the allegations in Abdulaziz's operative and prior complaints, the KSA persecuted Abdulaziz because of his increasingly prominent, public criticism of the KSA and MBS.  *See, e.g.*, TAC ¶ 133 ("The two [KSA] agents told Plaintiff that MBS was not happy with Plaintiff's political activities and criticisms against [the] KSA in general and MBS in particular.  The agents demanded that Plaintiff stop criticizing [the] KSA and MBS[.]"); SAC ¶ 141 ("Every single critic exposed in the McKinsey report has been imprisoned except for Plaintiff.  He has been safe only because he is in

---

[6] Twitter's motion challenges the adequacy of Abdulaziz's pleadings regarding proximate cause.  In his Opposition, Abdulaziz offers a lengthy exposition and defense of his pleadings with respect to other elements of negligence, specifically foreseeability, the standard of reasonable care, and failure to exercise reasonable care, *see* Opp. at 18-20.  As Twitter has not challenged the pleadings on these additional grounds by way of its Motion, it does not address these points in its Reply.  Twitter, of course, reserves its rights with respect to advancing such arguments at a later time.

[7] Although Abdulaziz claims that *Landeros v. Flood*, 17 Cal. 3d 399 (1976), supports his argument that proximate causation should not be determined as a matter of law, there the question was whether or not the conduct was foreseeable, leading the court to conclude that "foreseeability is a question of fact for the jury."

1630794

Canada.  This is why MBS has imprisoned and tortured family, friends, and associates."); OC ¶¶ 9-10 ("Plaintiff was especially vocal about the grave violations of human rights in [the] KSA, the disregard for Saudi citizens, and their rights and freedoms.  Saudi authorities retaliated by harassing Plaintiff.").  At most, Abdulaziz alleges that Twitter's conduct "operated in combination" with other factors, but because Twitter's conduct was not "sufficient in the absence of the others to bring about the harm, [it is] not [a] concurrent ***independent*** cause[]."  *See Viner*, 30 Cal. 4th at 1240 (emphasis added); *see also Pipitone v. Williams*, 244 Cal. App. 4th 1437, 1458 (2016) (A defendant's "conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.") (citation omitted).[8]  The TAC thus fails to adequately plead proximate causation as a matter of law, and Abdulaziz's claims should be dismissed in their entirety with prejudice.

### C.   All of Abdulaziz's claims are time-barred.

Abdulaziz's claims each have two-year statutes of limitations.  Cal Civ. Proc. Code § 335.1.  Twitter notified Abdulaziz of the state-sponsored breach of his account in December 2015, nearly four years before he filed suit.  *See* RJN, Exs. 1-4.  Thus, Abdulaziz's claims are untimely.

"A defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of."  *Hernandez v. Sutter W. Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)) (granting motion to dismiss on statute of limitations grounds based on judicially noticed dates).  This Court previously considered the judicially noticeable fact

---

[8] Although *Pipitone v. Williams*, 244 Cal. App. 4th 1437, 1458 (2016), concerns a motion for summary judgment, its substantial factor standard is still applicable on a motion to dismiss.  *See, e.g.*, *Mehr v. Federation Internationale de Football Assoc.*, 115 F. Supp. 3d 1035, 1064 (N.D. Cal. 2015) (dismissing case where plaintiff failed to "allege facts showing that the defendant's act or omission was a substantial factor in bringing about an injury suffered by plaintiff").  Further, Abdulaziz's attempt to factually distinguish *Pipitone* does not change the legal principle it sets forth.  The pertinent point is that Abdulaziz fails to plausibly allege that the KSA's persecution of Abdulaziz would not have occurred without the KSA's access of Twitter account information, and that insufficiency can clearly be evaluated on a motion to dismiss.

11

1630794

that Twitter sent Abdulaziz notice of the unauthorized access to his account in December 2015 and held that Abdulaziz's claims with two-year statutes of limitations were untimely as a matter of law. *See* Order at 12. Abdulaziz pleads no new facts that would alter the Court's holding.

Although Abdulaziz again contends that he did not receive the notices from Twitter, this argument is insufficient to "meaningfully dispute that Twitter sent notices in December 2015." Order at 11; *see also Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1078 (9th Cir. 1999). Abdulaziz also repeats his argument that even if he did receive the December 2015 notices, the notifications were false and misleading—but he concedes that his arguments mirror those he made previously. *See* Opp. at 14 n.12. Thus, there is no reason for the Court to reconsider its prior holding that the sending of the notifications was sufficient to begin the statute-of-limitations clock. *See* Order at 12.

Lastly, Abdulaziz argues that the discovery rule was not triggered by the December 2015 notifications because the notifications did not include sufficient detail. The discovery rule, which allows the plaintiff a longer accrual period than the ordinary rule, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1038 (C.D. Cal. 2003). But even under the discovery rule, Abdulaziz's claims accrued no later than December 11, 2015, because "[u]nder California law, a plaintiff is held to discover her cause of action when she suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Id.* (citation omitted). Twitter's December 2015 notifications were sufficient to lead a reasonably prudent person to suspect that a potential wrongdoing had occurred. Abdulaziz's argument that he did not have sufficient factual information to pursue a claim ignores well-settled law that a plaintiff "need not be aware of the specific 'facts' necessary to establish the claim[.]" *Id.* at 1039 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)). "Once the plaintiff has a suspicion of wrongdoing . . . it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* (citation omitted). Furthermore, "[s]ubjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further[.]" *Genisman v. Carley*, 29 Cal. App. 5th 45, 51 (2018). Indeed,

1630794

1    beyond the notices themselves, the articles from the popular press that Abdulaziz refers to, *see*

2    Opp. at 16, show that Twitter's December 2015 notifications would have made a reasonably

3    prudent person suspicious.  For example, the BBC News article from December 13, 2015 explains

4    that it was "the first time" that Twitter had issued a warning about hacking by "state-sponsored

5    actors," and noted that "government-backed attackers have far greater resources at their disposal

6    than criminal hacker gangs."[9]

7        In short, Abdulaziz merely rehashes old arguments and fails to address the underlying

8    problem the Court identified—that the December 2015 notifications were sufficient to put

9    Abdulaziz on notice of potential wrongdoing and thus his claims are barred by the statute of

10   limitations.  *See* Order at 12.  Abdulaziz's claims should thus be dismissed with prejudice as

11   time-barred.

12       **D.    Abdulaziz's claims are barred by Twitter's Terms of Service.**

13       Abdulaziz's claims are also barred by Twitter's Terms of Service ("TOS"), and in

14   particular its Limitation of Liability clause.  Abdulaziz argues the TOS and Limitation of Liability

15   clause are unenforceable against him because the TOS is "Adhesive and Too Ambiguous," Opp.

16   at 25, and the Limitation of Liability is otherwise "void as against public policy," *id.* at 27.

17   Abdulaziz's unenforceability argument is undermined in the first instance by his TAC's own

18   citation to and reliance on the TOS as an agreement between himself and Twitter.  TAC ¶ 74.

19   But beyond that, addressing each of his points, adhesion, ambiguity, and public policy, in turn, his

20   arguments fail.

21       As an initial matter, "adhesion" is just one portion of the inquiry as to the enforceability of

22   a contract.  For a contract to be unenforceable, it has to be both procedurally unconscionable (of

23   which adhesion is just one component) *and* also substantively unconscionable.  *Am. Bankers*

24   *Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1412 (9th Cir. 1996) (citations

25   omitted).  "The procedural element of unconscionability focuses on 'oppression or surprise due to

26   unequal bargaining power.'"  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)

27

28
---
[9] Chris Johnston, *Twitter warns of government 'hacking,'* BBC News (December 13, 2015), https://www.bbc.com/news/business-35089309.

13

DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

1    (citation omitted).  An adhesion contract is one that involves unequal bargaining power and is

2    presented on a take-it-or-leave it basis, but adhesion alone "give[s] rise to a low degree of

3    procedural unconscionability at most" without some additional element of oppression, "surprise

4    or other sharp practices." *Id.* at 1262 (citations omitted).  Abdulaziz does not allege any such

5    elements, and no oppression can be found in a contract where, as here, there are "reasonably

6    available alternative[s]" to the product and contract presented.  *See Darnaa, LLC v. Google LLC*,

7    756 F. App'x 674, 676 (9th Cir. 2018); *see also* Mot. at 17 n.11 (listing alternatives available to

8    Abdulaziz).  Accordingly, Twitter's TOS is not procedurally unconscionable.

9          Whether a contract is substantively unconscionable is determined by factors such as

10   "whether [its] terms are so one-sided as to shock the conscience."  *Soltani v. W. & S. Life Ins.*

11   *Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001).  In *Soltani*, the court considered whether similar

12   clauses had been upheld in other cases to determine whether the clause at issue was so one-sided

13   as to be substantively unconscionable—concluding that it was not.  *Id.* at 1044.  Likewise here, as

14   Twitter explained in its opening brief, courts have routinely enforced Limitation of Liability

15   clauses in cases such as these and confirmed that such clauses are not substantively

16   unconscionable.  *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118,

17   1126 (2012) (Limitation of liability clauses "have long been recognized as valid in California.")

18   (citations omitted); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (same).[10]

19         Without any authority in support, Abdulaziz nevertheless argues that substantive

20   unconscionability can be found any time there is a "naked disclaimer of liability such as the one

21   found in Twitter's TOS."  Opp. at 25.  But the case he relies on, *Soltani*, states nothing of the sort,

22   does not involve disclaimers or Limitations of Liability clauses, and in fact upheld the

23   enforceability of the clause at issue there—finding it not substantively unconscionable.  258 F.3d

24   at 1044.  Simply put, there is no legal support for Abdulaziz's view that disclaimers of liability

---

[10] Contrary to Abdulaziz's mischaracterization, Twitter is not arguing that "because it provides a
'free' service, it should be absolved of liability." *See* Opp. at 31.  Rather, Twitter's argument is
that the Limitation of Liability clause contained in its TOS, which Abdulaziz consented to, should
be enforced.  Twitter merely notes that enforcing limitation of liability clauses has been found
particularly appropriate when one party is offering its services at no cost to the user.  *See, e.g.*,
*Darnaa*, 756 F. App'x at 676.

14

1630794

1   are *per se* substantively unconscionable, and ample authority to the contrary.

2          With respect to the alleged "ambiguities" in Twitter's TOS, Abdulaziz doesn't identify

3   any actual ambiguities, much less offer any argument as to why any such alleged ambiguities

4   render the TOS unenforceable.  He cites cases for the proposition that "ambiguities in contract

5   terms must be resolved in favor of the non-moving party," Opp. at 25, but he does not explain

6   what terms should be resolved in his favor, and why any such resolution would render the TOS or

7   its Limitation of Liability clause unenforceable.  For example, he argues that Twitter's "Services"

8   is defined as including "websites" which he says are "unknown to the user" and as including

9   "SMS" and "APIs" which are "not defined."  *Id.* at 26.  First of all, websites, SMSs, and APIs are

10  terms that are either commonly understood or otherwise easily researched.  But more

11  importantly—none of Abdulaziz's claims relate to his use of SMSs, APIs, or "unknown"

12  websites.[11]  His claims against Twitter stem from the KSA's alleged intrusion into data he

13  allegedly uploaded, or provided, to Twitter—all of which are clearly encompassed in Twitter's

14  Limitation of Liability clause.  The clause, among other things, limits Twitter's liability for: "(iv)

15  unauthorized access, use or alteration of your transmissions or content."  RJN, Ex. B at 8.[12]

16  "Content" is earlier defined as all materials "uploaded, downloaded or appearing on the

17  Services."  *Id.* at 1.  Thus, the clause clearly applies to Abdulaziz's claims and there is no

18  ambiguity to resolve.[13]

19         Ignoring Twitter's rebuttal of this very argument in its opening brief, Abdulaziz continues

20

---

21  [11] Abdulaziz cites to *Viotti v. Giomi*, 230 Cal. App. 2d 730, 739 (1964) for the proposition that a
    "general disclaimer of liability" cannot exculpate a party from negligence claims.  However,
22  Twitter's Limitation of Liability clause is not a general disclaimer, but explicitly references
    claims for negligence and thus precludes recovery for negligence claims.  *See Food Safety Net*
23  *Servs.*, 209 Cal. App. 4th at 1128 ("[T]he limitation of liability clause would have precluded a
    recovery because it expressly encompassed 'the negligence . . .of' [Respondent] Food Safety.")

24  [12] In his Opposition, Abdulaziz does not cite the entirety of the Limitation of Liability clause.  He
25  omits, among other pertinent portions, this language.  *See* Opp. at 25-26.

26  [13] Abdulaziz appears to argue that the clause doesn't apply to his claims because his harm "did
    not result from [his] access" of Twitter.  Opp. at 26.  But the Limitation of Liability clause goes
    beyond liability for a user's "access to or use of or inability to access or use the services."  *See*
27  RJN, Ex. B at 8-9.  As discussed above, the clause is much broader.  Moreover, Abdulaziz's
    claims plainly ***do*** result from his  access and use of Twitter's services, which is how his allegedly
28  private information came to be uploaded and allegedly stored on Twitter's servers.

1630794

to insist that because the TOS reminds users to employ strong passwords and that Twitter reminds users that it will not be liable for their failure to do so—that this somehow generates an ambiguity and implies Twitter **will** be liable where a user **does** employ a strong password. Opp. at 26-27. But, the TOS states nothing of the sort, either explicitly in or even by implication. *See* Mot at 16 n.10. Indeed, any such implication is belied by the clear language of the Limitation of Liability clause which plainly lays out Twitter's limited liability and makes no mention of user's password protection as a condition precedent. Encouraging people to use strong passwords does not imply a security guarantee, particularly given the TOS's explicit disclaimer to the contrary. *See* RJN, Ex. B at 7-8 ("The Twitter Entities make no warranty or representation and disclaim all responsibility and liability for: (i) the completeness, accuracy, availability, timeliness, **security** or reliability of the Services or any Content . . . ") (emphasis added); *see also* Mot. at 16 n.10.

Abdulaziz's final argument is that Twitter's Limitation of Liability clause should be void against public policy under California Civil Code Section 1668 because it absolves Twitter of negligence in matter that "affect[s] the public interest." Opp. at 27. But the factors set forth in *Tunkl v. Regents of University of California*, 60 Cal. 2d 92, 98 (1963) as to when the public interest is implicated for Section 1668 purposes favor Twitter and thus counsel against voiding the clause. As explained in *Tunkl*, courts look to the following factors in assessing whether an exculpatory clause should be held void as against public policy:

> [1] It concerns a business of a type generally thought suitable for public regulation; [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

16

DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794

1   *Tunkl*, 60 Cal. 2d at 98-99.[14]

2          These factors do not support Abdulaziz's claim of voidness: The first factor (public

3   regulation) is simply inapplicable.  Although Abdulaziz argues that Twitter ought to be subject to

4   public regulation and cites "recent Congressional concern" and an antitrust lawsuit against a

5   different company—Google—he does not point to any applicable public regulation implicated

6   here.  Factors two, four and five also do not apply.  Principal across these factors is whether the

7   business at issue provides a service of "great importance to the public"—a service which is a

8   "practical necessity."  *See Okura v. United States Cycling Fed'n*, 186 Cal. App. 3d 1462, 1466-67

9   (1986) (explaining that factors two, four and five all turn on the question of the essential nature of

10  the service).  On this question, courts have held that "social media," like Twitter, is "not one of

11  life's necessities."  *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455, at *2

12  (N.D. Cal. Aug. 9, 2019) ("Facebook is not a necessity of life and anyone who does not like the

13  terms of service can go elsewhere.").  Moreover, there were many reasonable alternatives

14  available to Abdulaziz, including Facebook, Reddit, Tumblr, Orkut, Instagram, SnapChat and

15  WhatsApp—as already discussed in Twitter's Motion.  *See* Mot. at 17 n.11; *see also Darnaa,* 756

16  F. App'x at 676 (upholding district court's dismissal of claim based on YouTube's "limitation of

17  liability provision" and noting that the service is not essential in that "reasonably available

18  alternatives exist," even if "not equally dominant or popular").[15]  The third factor is also

19  inapplicable.  Twitter does not hold itself out as willing to provide its services to "any member of

20  the public," as its TOS expressly reserves the right to terminate users' access to its platform "at

21  any time for any or no reason," whether related to a violation of the TOS or otherwise.  *See* RJN,

22  Ex. B at 6.  Abdulaziz acknowledges as much in his Opposition.  *See* Opp. at 29 (recognizing

23  Twitter's termination of President Trump's Twitter account).  Thus, evaluating the *Tunkl* factors

___

24  [14] Abdulaziz lists five factors, but there are six.

25  [15] Abdulaziz's cited cases are readily distinguishable as they involve plainly essential services:
    housing (*Henrioulle v. Marin Ventures, Inc.*, 20 Cal. 3d 512, 517-520 (1978)); childcare (*Gavin
26  W. v. YMCA Metropolitan Los Angeles*, 106 Cal. App. 4th 662 (2003)), banking (*Vilner v. Crocker
    National Bank*, 89 Cal. App. 3d 732 (1979)), insurance (*Akin v. Business Title Corp.*, 264 Cal.
27  App. 3d 153 (1986)), automotive repair (*Gardner v. Downtown Porsche Audi*, 180 Cal. App. 3d
    713 (1968)), and a boat marina, because as the court explained—some type of boat storage is
28  essential for boat owners (*Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d 1551 (1986)).

1630794

as a whole, five of the six factors counsel against a finding that the public interest is implicated such that the clause should be voided pursuant to Section 1668 as contrary to public policy.

Accordingly, none of Abdulaziz's arguments succeed: Twitter's TOS and its Limitation of Liability clause are not unenforceable as unconscionable, ambiguous, or against public policy. Twitter's TOS thus bars both of Abdulaziz's claims.

### E. Abdulaziz's negligent supervision and retention claim fails because it is unsupported by well-pleaded facts.

The Court previously held that Abdulaziz had failed to state a claim for negligent hiring, supervision, and retention as Abdulaziz's FAC's allegations "that there were 'red flags' and known risks—are conclusions, not facts." Order at 12.  Abdulaziz's Opposition and TAC still fail to remedy this problem.[16]  *See* Mot. at 17-18.

Rather than grappling with the TAC's factual deficiencies in his Opposition, Abdulaziz instead tries but fails to dismiss Twitter's cited cases as inapplicable.  He argues that the *Juarez* case was decided on summary judgment, but this does not change the legal proposition that Twitter has cited *Juarez* for, which is that there can be no liability for negligent supervision absent "knowledge by the principal that the agent or servant was a person who could not be trusted."  *See Juarez v. Boy Scouts of Am. Inc.*, 81 Cal App. 4th 377, 395 (2000) (citation omitted).  Nor does Plaintiff meaningfully distinguish the statement of law Twitter provided from *Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996).  Indeed, Abdulaziz goes on to quote from *Doe*, restating the central point Twitter draws from that case, which is that "the cornerstone of a negligent hiring theory is the risk that the employee will act in a certain way and the employee does act in that way."  Opp. at 17.  But Abdulaziz then does nothing to address his failure to plead any such risk.

Abdulaziz's Opposition's only attempts to address the deficiencies of his TAC fall short for the same reasons already discussed in Twitter's Motion: they consist of conclusory allegations

---

[16] Abdulaziz appears to have abandoned his claim for negligent hiring in his TAC and Opposition, styling his claim as only a "Negligent Supervision and/or Retention" claim, and noting that he need not allege that Twitter knew or should have foreseen Abouammo and Alzabarah's wrongdoing prior to hiring them to prove his claim.  TAC ¶¶ 160-61; Opp. at 16-18.

1630794

1 and restatements of facts that were **unknown** to Twitter and therefore could not have led Twitter

2 to become aware of any such risk that Abouammo and Alzabarah would become KSA spies.  In

3 his Opposition, for example, Abdulaziz recites facts about Abouammo and Alzabarah's then

4 **undisclosed** unauthorized accessing of Twitter information from the related criminal case.  *See,*

5 *e.g.*, Opp. at 17, citing Criminal Complaint ¶ 26; *see also* Opp. at 18-20 (relying on Criminal

6 Complaint).  He argues, without any factual basis, that "Twitter knew or should have known that

7 involving Abouammo in regular contact with extremely rich and politically powerful foreign

8 officials . . . created the risk that he would at least be compromised." Opp. at 17.  But this is

9 wholly conclusory.  Abdulaziz offers no facts that Twitter actually did know about any such risk

10 prior to late 2015, or any facts as to why or how Twitter should have known about such a risk.

11 Abdulaziz otherwise doubles down on the notion that Abouammo and Alzabarah's

12 conduct must have or ought to have "set[] off alerts in Twitter's security system" that were

13 ignored, but as previously discussed in Twitter's Motion, these allegations are conclusory and

14 contradicted by yet others in the TAC that Twitter had no such alert system, and that Twitter took

15 remedial action as soon as it learned of its employees' wrongdoing.  *See* Mot. at 17-18.  "[M]ere

16 conclusory statements" and implausible allegations are not enough to survive a motion to dismiss.

17 *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Abdulaziz fails to contend with this issue or

18 explain this contradiction in his Opposition.

19 **III.  PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED**

20 Plaintiff has already been afforded three separate opportunities to amend his complaint.  If

21 he had a sufficient factual basis to plead his claims, it would already be before the Court.  He

22 should not be given yet another opportunity to amend—nor does his request to amend even

23 indicate what additional facts he would add, and why such facts would overcome the deficiencies

24 contained in all his prior complaints, including the TAC.  Accordingly, Abdulaziz's request for

25 leave to amend should be denied.

26 **IV.  CONCLUSION**

27 Abdulaziz's TAC fails as a matter of law and cannot be cured by amendment.  It should

28 be dismissed in its entirety and with prejudice.

1630794

1

2

Dated:  January 29, 2021                              KEKER, VAN NEST & PETERS LLP

3

By:   /s/ *Benjamin Berkowitz*

4                                                               BENJAMIN BERKOWITZ
                                                              KHARI J. TILLERY
5                                                               ANJALI SRINIVASAN
                                                              RYLEE KERCHER OLM
6
                                                              Attorneys for Defendant
7                                                               TWITTER, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT
Case No. 3:19-cv-06694-LB

1630794